**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                    **CIVIL ACTION**
**FOR THE USE AND BENEFIT OF**
**EXPOSED ROOF DESIGN, LLC**

**VERSUS**                                      **CASE NO. 23-2293**

**TANDEM ROOFING, LLC et al.**                  **SECTION: "G"(5)**

## ORDER AND REASONS

Before the Court is Defendant Tandem Roofing, LLC's ("Tandem") Motion to Dismiss, Sever, and Transfer Venue.[1] In this litigation, Plaintiff Exposed Roof Design LLC ("Exposed") seeks to recover payments for work it performed but which Tandem and other Defendants did not tender.[2] Tandem moves to dismiss Exposed's Miller Act and Federal Prompt Payment Act claims under Rule 12(b)(6).[3] Tandem also moves to sever the state common law claims Exposed asserted against it and transfer those claims to the Northern District of Texas because of a forum selection clause in the contract between Exposed and Tandem.[4] In response, Exposed filed an Amended Complaint, which withdraws the Miller Act and Federal Prompt Payment Act claims against Tandem mooting the Rule 12(b)(6) arguments.[5] Exposed also argues that the inconvenience non-signatory Defendants to the contract containing the forum selection clause would face if the case is severed and transferred, as well as judicial economy concerns, favor keeping the case in this

---

[1] Rec. Doc. 16.

[2] Rec. Doc. 1.

[3] Rec. Doc. 16.

[4] *Id.*

[5] Rec. Doc. 19.

1

Court.[6] Having considered the motions, the memoranda in support and in opposition, the record, and the applicable law, the Court finds the motion to dismiss moot and denies the motion to sever and transfer.

## I. Background

On June 30, 2023 Exposed filed a Complaint against Defendants Tandem, E&F Construction ("E&F"), Markel Insurance Company ("Markel"), and SureTec Insurance Company ("Suretec") in this Court.[7] Exposed seeks to recover damages for work it allegedly performed but was not paid for as a subcontractor on a construction project ("Project") related to the repair of two buildings at the Naval Air Station Joint Reserve Base New Orleans in Belle Chasse, Louisiana.[8] Exposed is a construction company that among its services, provides roofing materials and performs roofing work.[9] Tandem is a commercial and industrial roofing company that was a subcontractor to E&F, the prime contractor that contracted with the Department of the Navy to work on the Project.[10]

Exposed alleges that on or around August 29, 2022, it entered into a $215,635 subcontract with Tandem to "provide labor and install the roofing system" for the Project.[11] Exposed alleges that it priced its labor according to Tandem's estimate that the Project would be completed in four weeks.[12] Exposed alleges that it then performed work from September 12, 2022 to October 7,

---

[6] Rec. Doc. 20.

[7] Rec. Doc. 1.

[8] *Id.* at 1.

[9] *Id.*

[10] *Id.* at 1–2.

[11] *Id.* at 5.

[12] *Id.*

2022, but Tandem caused significant delays to the Project.[13] Specifically, Exposed alleges that "Tandem failed to (1) properly prepare the Project site for installation; (2) estimate the proper amount of roofing material to supply the Project; (3) estimate the time that it would take for installation; and (4) ensure that a sufficient amount of roofing material was onsite."[14] Exposed alleges that as a result of the delay, Tandem signed Change Order #1 ("Change Order" and collectively with the Subcontract, the "Agreement") to pay Exposed another $215,625 for four weeks of labor and costs for the Project.[15]

Exposed alleges, however, Tandem later notified Exposed "it no longer had the funds to keep [Exposed] on the Project."[16] Exposed alleges that as a result of this news and to preserve its rights under the Miller Act, Exposed "timely sent its notice of intent to … E&F on or around November 15, 2023."[17] Exposed further alleges that from November 2022 through mid-May 2023, Tandem "repeatedly represented " to Exposed that it would be paid the additional $215,625 under the Change Order, but ultimately, Tandem did not pay Exposed.[18] Exposed alleges that it finally sent Tandem a formal demand letter for payment on March 24, 2023, to which Tandem responded that it would send payment of the $215,625 in two checks.[19] Exposed alleges that it received the first check from Tandem on April 17, 2022, but the check could not be cashed because there were

---

[13] *Id.*

[14] *Id.*

[15] *Id.* at 5–6.

[16] *Id.* at 6.

[17] *Id.*

[18] *Id.*

[19] *Id.*

insufficient funds.[20] Exposed alleges that although Tandem initially responded that it would re-issue the bounced check, it ultimately did not and thereafter did not make further payments.[21]

Exposed alleges that E&F secured a payment bond, Bond No. 4415766 ("Payment Bond"), issued by Markel and Suretec on or about June 10, 2020, as part of its obligations under the Miller Act.[22] Exposed alleges that it sent a letter to E&F notifying them of a claim for $327,238.28 ("Miller Act Notice").[23] Exposed alleges that after it provided Miller Act Notice, Tandem paid it $102,718.75.[24] Exposed further alleges that Defendants are jointly and severally liable for the $215,625 left on the balance of its claim.[25]

In the original Complaint, Exposed brought several causes of action against Defendants. First, Exposed brought a breach of contract cause of action against Tandem, alleging that Tandem failed to make payment under the Agreement despite Exposed performing the work it was required to under the Contract.[26] In addition to recovering payment owed from the Agreement, Exposed sought "interest, reasonable attorney's fees under Texas Civil Practice & Remedies Code Chapter 38, and costs incurred in the prosecution of this lawsuit …"[27] Second, Exposed brought a Miller Act claim against all Defendants, asserting that when Suretec and Markel issued the Payment Bond, they "undertook a direct obligation with the United States of America to act as the surety

---

[20] *Id.* at 7.

[21] *Id.*

[22] *Id.*

[23] *Id.* at 8.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.* at 9.

with respect to E&F and Tandem's obligations to make payments to subcontractors and suppliers for labor and materials furnished to the Project."[28] Exposed asserted that it met the requirements for bringing a Miller Act claim because it provided labor for the Project, was not paid in full within 90 days after the day on which it last worked on the Project, was a second-tier subcontractor who contracted directly with a first-tier subcontractor, Tandem, timely sent its notice of intent to E&F as the prime contractor on the Project, and filed this instant lawsuit less than a year after it last provided labor and services to the Project.[29] Third, Exposed brought a Federal Prompt Payment claim against all Defendants, alleging that the payments Defendants owed are accruing statutory interest.[30] Finally, Plaintiff brought a quantum meruit claim against Tandem for "recovery of the reasonable value of the services and materials, interest …, [and] attorneys' fees and costs."[31]

On August 29, 2023, Tandem moved to dismiss the Miller Act and Federal Prompt Pay Act claims against it, sever the breach of contract and quantum meruit claims against it from the claims asserted against E&F, Markel, and Suretec, and transfer those claims to the Northern District of Texas.[32] On August 29, 2023, Exposed file a response opposing Tandem's motion.[33] On the same day, Exposed also filed a First Amended Complaint to withdraw its Miller Act claim against Tandem and the Federal Prompt Payment claim against all Defendants.[34] Exposed also added a Texas Prompt Payment Act against Tandem, alleging that Tandem received payment for

---

[28] *Id.*

[29] *Id.* at 9–10.

[30] *Id.* at 10 (citing to 31 U.S.C. § 3901 *et. seq.*).

[31] *Id.*

[32] Rec. Doc. 16.

[33] Rec. Doc. 20.

[34] Rec. Doc. 19.

the work that Exposed furnished to Tandem but that Tandem did not pay Exposed within seven days of Tandem's receipt of those payments.[35] Exposed seeks actual damages of $215,625 related to the Project, attorneys' fees, statutory interest under the Texas Prompt Payment Act, pre and post-judgment interest, and costs.[36] Aside from these changes, the First Amended Complaint is substantially the same as the original Complaint Exposed initially filed.[37]

## II. Parties' Arguments

### A.    *Tandem's Arguments in Support of the Motion*

#### 1.    **Rule 12(b)(6) Motion to Dismiss**

First, Tandem argues that Exposed's Miller Act claim against it should be dismissed because the Miller Act only allows a party to bring a claim for payment on the payment bond against the sureties that issued the payment bond rather than against Tandem as a subcontractor on the Project.[38]  Second, Tandem contends that Plaintiff's Federal Prompt Payment Act claim should be dismissed because the Federal Prompt Payment Act does not create a private cause of action.[39] As discussed above, these arguments are moot because Exposed withdrew these claims in the Amended Complaint.

#### 2.    **Severing Other Claims Against Tandem and Transferring Venue to the Northern District of Texas**

Tandem argues that Exposed's breach of contract and quantum meruit claims against it should be transferred to the Northern District of Texas because the Agreement between Exposed

---

[35] *Id.* at 10.

[36] *Id.* at 11.

[37] *See* Rec. Doc. 1.

[38] Rec. Doc. 16 at 1–2.

[39] Rec. Doc. 16-1 at 2.

and Tandem contains a forum selection clause requiring litigation related to the Agreement to be filed in Dallas County, Texas.[40] Tandem notes that "Texas law also favors enforcement of mandatory forum selection clauses."[41] Tandem avers that because Exposed and Tandem entered into the Agreement with this forum selection clause, they "effectively represent to each other that the agreed forum is not so inconvenient that enforcing the clause will deprive either party of its day in court, whether for cost or for other reasons."[42]

Tandem contends that this mandatory forum selection clause, in part, requires the breach of contract and quantum meruit claims to be severed from the Miller Act claims Exposed has asserted because this Court is the required venue for the Miller Act claims.[43] Tandem points to *In re Rolls Royce Corp.*, which sets forth the Fifth Circuit's test for severance and transfer of venue when not all of the Defendants are bound by the mandatory forum selection clause and contends that this analysis weighs towards severance and transfer.[44]

As to the first *Rolls Royce* prong, Tandem contends that the 28 U.S.C. § 1404(a) private interest factors analysis is not relevant because the Miller Act claims against non-signatory Defendants are not bound by the forum selection clause that mandates transfer.[45]

---

[40] *Id.* at 2.

[41] *Id.* at 6.

[42] *Id.* at 7.

[43] Rec. Doc. 16 at 2.

[44] Rec. Doc. 16-1 at 7 (citing *In re Rolls Royce Corp.*, 775 F.3d 671, 681 (5th Cir. 2014) "First, pursuant to *Atlantic Marine,* the private factors of the parties who have signed a forum agreement must, as matter of law, cut in favor of severance and transfer to the contracted for forum. Second, the district court must consider the private factors of the parties who have *not* signed a forum selection agreement as it would under a Rule 21 severance and section 1404 transfer analysis. Finally, it must ask whether this preliminary weighing is outweighed by the judicial economy considerations of having all claims determined in a single lawsuit.").

[45] *Id.* at 8.

Tandem argues that under the second *Rolls Royce* prong, the Court needs to look at the five factors that the Fifth Circuit follows for a Rule 21 severance analysis.[46] As to the first Rule 21 factor, Tandem argues that "the two resulting cases would not implicate the same transaction or occurrence" because Exposed's claims "against E&F and the sureties are statutory causes of action arising under the principal-surety relationships against those parties, while Exposed's claims against Tandem are common law claims arising as a matter of contract law."[47] As to the second Rule 21 factor, Tandem contends that "the resulting claims in the two cases would be legally distinct, one under the Miller Act and the other under the contract between Plaintiff and Tandem."[48] As to the third factor, Tandem avers that because there is a mandatory forum selection clause, this "mitigates the consideration of judicial economy in the analysis."[49] Tandem also reasons that once the breach of contract claim is adjudicated, "it would fix the amount due on the Miller Act claim."[50] As to the fourth and fifth factors, Tandem contends that "[a]ny prejudice against the non-signatories is minimal, as they would remain before this Court."[51] Tandem also offers that this Court could stay the Miller Act claims pending the determination of the payment owed in Texas.[52] Tandem concludes that severance would have a "beneficial effect on this Court's

---

[46] *Id.* (citing *Defense Distributed v. Bruck*, 30 F.4th 414, 431 (5th Cir. 2022) (citation omitted) (These five factors are: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) whether settlement or the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required to for the separate claims.").

[47] *Id.* at 9.

[48] *Id.* at 10.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.* at 11.

economies in overseeing the Miller Act claims by limiting and simplifying the issues to be adjudicated under that statute."[53]

As to the third *Rolls Royce* prong, Tandem contends that severance and transfer of the state law claims would be beneficial for judicial economy because the Northern District of Texas could adjudicate the amount owed to Exposed under the Agreement, which would "limit[] and simplify[]" the issues to be adjudicated under the Miller Act in this Court.[54] Tandem notes that "the Miller Act claims are contingent on the disputed amounts to be owed under Tandem's contract with the Plaintiff."[55] Tandem has also offers that the Court could "fashion other relief in connection with the severance and transfer to mitigate any burden, such as that suggested by the Fifth Circuit in the *Rolls Royce* opinion–common discovery and other pretrial matters, video depositions for use in both cases, stipulations, etc."[56]

**B.    *Exposed's Arguments in Opposition to Tandem's Motion***

Exposed filed a response opposing Tandem's motion.[57] First, Exposed argues that because it removed the Miller Act and Federal Prompt Payment Act claims against Tandem in the First Amended Complaint, Tandem's arguments regarding those claims are now moot.[58]

Second, Exposed argues that the Rule 21 severance factors weigh against severance.[59] As to the first factor, Exposed asserts that the claims against Tandem arise directly out of the same

---

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] Rec. Doc. 20.

[58] *Id.* at 5.

[59] *Id.* at 6–10.

transaction as the Miller Act claim against E&F, Markel, and SureTec because they all "derive from Tandem's failure to pay Exposed the $215,625 it remains owed under the Agreement."[60] As to the second factor, Exposed contends that claims against Tandem and claims against the non-signatories present common questions of law and fact, which include "(1) whether Exposed provided labor and services to the Project per the Agreement; (2) whether Exposed remains unpaid for the labor and services it provided; and (3) whether Tandem has failed to pay Exposed the outstanding balance under the Agreement."[61] As to the third factor, Exposed contends that severance will hamper settlement and judicial economy because it will lead to duplicative discovery, redundant motion practice, two trials, and consequently, increase the costs of litigation and harm settlement prospects.[62] As to the fourth factor, Exposed avers that E&F would be prejudiced by severance because it would have to engage in duplicate litigation.[63] As to the fifth factor, Exposed contends that the "same witnesses and documentary evidence are required for all claims" because the witnesses in both cases would be employees of E&F, Tandem, and Exposed and documents in both cases would be related to Exposed's performance on the Project and Tandem's failure to pay the amount owed.[64]

Third, Exposed argues that the Section 1404(a) private interest factors as applied to E&F, Markel, and Suretec weigh against transfer.[65] Exposed contends that most of the witnesses and

---

[60] *Id.* at 7.

[61] *Id.* at 8.

[62] *Id* at 9.

[63] *Id.* at 9–10.

[64] *Id.* at 10.

[65] *Id.* at 10–13.

evidence related to the litigation would be found in this district, as the Project was located in Belle Chasse, Louisiana.[66] Exposed also notes that transfer may require the joinder of E&F, which would create "a host of practical concerns making trial more difficult, less expeditious, and more expensive."[67]

Fourth, Exposed argues that the Section 1404(a) public interest factors disfavor transfer because its claims against Tandem and its claims against E&F, Markel, and Suretec are so connected that a court would need to reach the merits of the claims against Tandem in order to determine the merits of the claims against E&F, Markel, and Suretec.[68] Exposed also argues that this case concerns a local controversy that should be decided in this district because this case is a dispute regarding a federal construction project at the Naval Air Station Joint Base New Orleans.[69]

### III. Legal Standards

#### A.   *Rule 21 Severance*

Motions to sever are generally governed by Federal Rule of Civil Procedure 21, which provides that "any claim against a party may be severed and proceeded with separately."[70]  This Court has "broad discretion to sever issues to be tried before it."[71]  Accordingly, a court's decision to sever a claim will be reviewed for abuse of discretion.[72] Although courts have looked to Rule

---

[66] *Id.* at 11–12.

[67] *Id.* at 12.

[68] *Id.* at 12–13.

[69] *Id.* at 13.

[70] Fed. R. Civ. P. 21.

[71] *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994).

[72] *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 520 (5th Cir. 2010) (citing *Jolley v. Welch*, 904 F.2d 988, 994 (5th Cir. 1990)).

20 for guidance in the absence of any standards in Rule 21,[73] courts may sever claims even where the requirements of Rule 20(a) for permissive joinder have been satisfied.[74] To determine whether a claim should be severed, a court may consider the following factors: (1) whether the claim arose out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) whether settlement or judicial economy would be promoted; (4) whether prejudice would be averted by severance; and (5) whether different witnesses and documentary proof are required for separate claims.[75] It is notable that the first two factors track the "two-prong test" created by Rule 20, which permits joinder of plaintiffs when "(1) the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and when (2) there is at least one common question of law or fact linking all claims."[76] Therefore, application of these five factors accounts for whether joinder was appropriate, but it also allows for the exercise of judicial discretion in instances where joinder was permissible but severance is warranted.

**B.     *Transfer Under 28 U.S.C. § 1404(a)***

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have

---

[73] *Id.* at 521.

[74] *U.S. v. O'Neil*, 709 F.2d 361, 369 (5th Cir. 1983).

[75] *Vaz v. Allstate Property & Cas. Co*, No. 6-cv-481, 2006 WL 2583733, at *1 (S.D. Miss. Sept. 6, 2006) (Walker, MJ) (citing *Morris v. Northrop Grumman Corp.*, 37 F.Supp.2d 556, 580 (S.D.N.Y. 1999)); *Corkern v. Hammond City*, No. 11-1828, 2012 WL 2597561, at *2 (E.D. La. July 5, 2023) (Milazzo, J.) (citing *Kreger v. General Steel Corp.*, No.7-575, 2011 WL 1594839, at *2 (E.D. La. Apr. 25, 2011) (Berrigan, J)).

[76] *Acevedo*, 600 F.3d at 521 (citations omitted).  Even when the test for joinder is satisfied, district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay.  *Id.* (citing *Applewhite v. Reichhold Chems, Inc.*, 67 F.3d 571, 574 (5th Cir. 1995)).

consented."[77] Section 1404(a) is "a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer."[78]

Usually, a court applying the doctrine of *forum non conveniens* must determine whether there is an adequate alternative forum and, if so, determine which forum is best-suited to the litigation by considering "a variety of private- and public-interest factors and giving deference to the plaintiff's choice of forum."[79] "The private-interest factors include 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'"[80] "The public-interest factors include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'"[81] A plaintiff's choice of forum is typically given some significant, but not determinative, weight.[82]

However, the existence of a mandatory, valid forum selection clause simplifies the analysis in two ways: (1) the "'the plaintiff's choice of forum merits no weight' because, by contracting for a specific forum, 'the plaintiff has effectively exercised its 'venue privilege' before a dispute

---

[77] 28 U.S.C. § 1404(a).

[78] *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. Of Tex.*, 571 U.S. 49, 60 (2013) (internal citations omitted).

[79] *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016) (citing *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794–95 (5th Cir. 2007)).

[80] *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 766–67 (5th Cir. 2016) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

[81] *Id.* at 767 (quoting *Piper Aircraft*, 454 U.S. at 241 n.6).

[82] *Id.* (citing *Atl. Marine*, 571 U.S. at 62 n.6).

arises;'"[83] and (2) the "private-interest factors 'weigh entirely in favor of the preselected forum,' so that the 'district court may consider arguments about public-interest factors only.'"[84] Thus, "a valid forum-selection clause controls the *forum non conveniens* inquiry '[i]n all but the most unusual cases.'"[85] The Fifth Circuit has held that this "harmonizes" with the Supreme Court's "guidance that contractually selected forums often 'figure[] centrally in the parties' negotiations' and become part of those parties' 'settled expectations'—so if a plaintiff disregards such a contractual commitment, 'dismissal . . . work[s] no injustice.'"[86]

In analyzing a forum selection clause, a court must first determine whether the forum selection clause is mandatory or permissive.[87] Once a court makes this determination, it must decide whether the forum selection clause at issue applies to this specific case, which involves two separate inquiries: (1) whether the forum selection clause is valid and enforceable and (2) whether the present case falls within the scope of the forum selection clause.[88]

**C.     *Severance and Transfer Under Rolls Royce***

In situations where some but not all parties have entered into a forum selection clause, the Fifth Circuit has instructed that the severance and transfer inquiry requires courts to apply the three prongs analysis in *Rolls Royce*.[89] First, "the private factors of the parties who have signed a forum agreement, must, as [a] matter of law, cut in favor of severance and transfer to the contracted for

---

[83] *Barnett*, 831 F.3d at 300 (quoting *Atl. Marine*, 571 U.S. at 63).

[84] *Id*. (quoting *Atl. Marine*, 571 U.S. at 63).

[85] *Id.* (quoting *Atl. Marine*, 571 U.S. at 63).

[86] *Id.*

[87] *Weber*, 811 F.3d at 770-71 (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384–86 (2d Cir. 2007)).

[88] *Id*. at 770.

[89] *Rolls Royce*, 775 F.3d at 681.

forum."[90] Second, the Court "must consider the private factors of the parties who have *not* signed a forum selection agreement as it would under a Rule 21 severance and section 1404 transfer analysis."[91] Third, the Court must ask "whether this preliminary weighing is outweighed by the judicial economy considerations of having all claims determined in a single lawsuit."[92] In making this determination, the Court "should consider whether there are procedural mechanisms that can reduce the costs of severance, such as common pre-trial procedures, video depositions, stipulations, etc."[93] The *Rolls Royce* severance and transfer analysis is a "fact-intensive analysis" and the presence of a forum selection clause does not "require[] severance-and-transfer in all situations."[94] The Fifth Circuit concluded that there are essentially three options in a situation where some of the defendants are not bound by a forum selection clause: (1) transfer the entire case; (2) sever and transfer only the parties bound by the forum selection clause; or (3) maintain the entire lawsuit in this Court notwithstanding the forum selection clause.[95]

## IV. Analysis

Tandem argues that Exposed's Miller Act claim against it must be dismissed because Tandem is not a contractor within the meaning of the Miller Act and Exposed's Federal Prompt Payment Act against it must also be dismissed because there is no private cause of action.[96] As

---

[90] *Id.*

[91] *Id.*

[92] *Id.*

[93] *Id.*

[94] *Id.*

[95] *See id.* at 679.

[96] Rec. Doc. 16-1 at 4–6.

discussed above, these arguments are moot because Exposed withdrew these claims in the Amended Complaint.

Tandem also argues that Exposed's breach of contract and quantum meruit claim against it should be severed and transferred to the Northern District of Texas because of a mandatory forum selection clause in the Agreement between Exposed and Tandem.[97] Exposed opposes, arguing that the severance and transfer analysis favors keeping the case in this Court because severing and transferring to the Northern District of Texas would principally inconvenience E&F, who did not sign the contract containing the mandatory forum selection clause, and strain judicial resources by duplicating the proceedings.[98] The Court addresses each issue in turn.

## A.     *The mandatory forum selection clause favors severance and transfer.*

Under the first prong of *Rolls Royce*, the existence of a mandatory forum selection clause, must as a matter of law, weigh in favor of severance and transfer.[99] Here, the Agreement between Exposed and Tandem contains a forum selection clause that states "the venue for any arbitration proceeding or litigation between the parties to this agreement shall be in Dallas County, Texas."[100] E&F, Markel, and Suretec were not signatories to the Agreement containing the forum selection clause.[101] The parties do not dispute the validity and enforceability of the forum selection clause identifying Dallas County as the forum for disputes related to the Agreement or that this litigation

---

[97] *Id.* at 6–12.

[98] Rec. Doc. 20 at 5–12.

[99] *Rolls Royce*, 775 F.3d at 681.

[100] Rec. Doc. 19-1 at 17.

[101] *See* Rec. Doc. 19-1.

is within the scope of the forum selection clause.[102] Thus, this weighs in favor of severance and transfer to Dallas County, which is located in the Northern District of Texas.

**B.**      ***The private factors of non-signatory Defendants weighs against severance and transfer.***

Under the second prong of the *Rolls Royce* analysis, the Court "must consider the private factors of the parties who have not signed a forum selection agreement as it would under a Rule 21 severance and section 1404 transfer analysis."[103]

### 1.      Rule 21 private interest factors

The Court considers the following factors in a Rule 21 severance analysis: (1) whether the claim arose out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) whether settlement or judicial economy would be promoted; (4) whether prejudice would be averted by severance; and (5) whether different witnesses and documentary proof are required for separate claims.[104]

Under the first Rule 21 factor, Exposed's breach of contract and quantum meruit claims against Tandem arose out of the same events that gave rise to Exposed's Miller Act claims against E&F, Markel, and Suretec. All of the claims arise from Defendants' alleged failure to pay Exposed for work it performed on the Project. Therefore, the first factor disfavors severance.

The second factor also disfavors severance as there are common questions of fact related to whether Exposed satisfied its labor and services obligations under the Agreement, whether any of the Defendants have failed to pay Exposed for the labor and services it provided, and the amount

---

[102] *See Weber*, 811 F.3d at 770–71.

[103] *Rolls Royce*, 775 F.3d at 681.

[104] *Vaz*, 2006 WL 2583733, at *1 (citation omitted); *Corkern*, 2012 WL 2597561, at *2 (citation omitted).

of payment owed to Exposed. The elements of a Miller Act claim share similar elements to the breach of contract and quantum meruit claims.

The Miller Act provides in part that:

> Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished … and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought …[105]

The elements of the breach of contract and quantum meruit claims, meanwhile, also concern whether Exposed performed work for Tandem under the Agreement and whether Tandem failed to make payments for the work performed by Exposed. Therefore, the Miller Act claims against non-signatory Defendants and the state law claims against Tandem are inextricably linked. As Tandem admits, "the Miller Act claims are contingent on the disputed amounts alleged to be owed under Tandem's contract with the Plaintiff …"[106]

The third factor also disfavors severance because judicial economy would be undermined with two similar cases proceeding in two federal district courts. If the state law claims were transferred, this Court would either have to stay the case here while Exposed and Tandem determine how much is owed to Exposed or proceed with duplicate proceedings to determine Tandem and the other Defendants' liabilities to Exposed.[107]

Under the fourth factor, non-signatory Defendants may face prejudice if the claims against Tandem were to proceed in the Northern District of Texas without them. If this claims against the

---

[105] 40 U.S.C. § 3133(b)(1).

[106] Rec. Doc. 16-1 at 11.

[107] Under the third factor, the Court also considers whether severance will promote settlement. This factor is neutral, as increased litigation costs may incentivize the parties to settle but it could also hinder settlement while the non-signatory Defendants remaining in this Court await the outcome of the claims against Tandem in the Northern District of Texas.

non-signatory Defendants were stayed in this Court, while the claims against Tandem proceeded in Texas, that court would determine the amount Tandem owes to Exposed, but then the non-signatory Defendants may ultimately be held liable to Exposed for repayment of that amount under the Miller Act in this Court. Tandem admits that the Miller Act claims against the non-signatory Defendants are contingent on the amount owed under Tandem's contract with Exposed.[108] Therefore, a severance may cause prejudice to the non-signatory Defendants, who would not be parties in the severed case.

As for the fifth factor, the same witnesses and documents would likely be presented to prove each of the claims. As discussed in more detail above, the elements of a Miller Act claim are related to the elements of the breach of contract and quantum meruit claims. Therefore, the Rule 21 factors strongly disfavor severance.

### 2.    Section 1404(a) private interest factors

Under the second prong of *Rolls Royce*, the Court must also consider the Section 1404(a) private interest factors as they relate to the non-signatory Defendants.[109] "The private-interest factors include 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'"[110]

Many of the Section 1404(a) private interest factors are neutral, except for the last factor. Because the Project occurred in Belle Chasse, Louisiana, within this district, the relevant non-

---

[108] Rec. Doc. 16-1 at 11.

[109] *Rolls Royce*, 775 F.3d at 681.

[110] *Weber*, 811 F.3d at 766–67 (citation omitted).

corporate witnesses are likely to be here. However, the heart of this case is a commercial contractual dispute between the parties, and so many of the witnesses are likely to be corporate witnesses. The corporate witnesses are not necessarily geographically tied to this district and corporate witnesses are less likely to face barriers to participating in trial and other pre-trial matters.[111] In addition, given the relative recency of the events giving rise to this litigation, the digital storage and delivery of documents neutralizes the potential challenges of non-signatories' ease of access to sources of proof. As mentioned above, it would be easier for non-signatory Defendants to access non-corporate witnesses here, as the Project occurred within this district.

The last factor, whether transfer poses any practical problems that make trial of a case easy, expeditious, and inexpensive, is the most relevant factor and it disfavors transfer of the claims against Tandem. Transfer would result in two trials and would be inconvenient and prejudicial for E&F, Markel, and Suretec. Tandem suggests that the claims against the non-signatory Defendants could be stayed pending resolution of the claims against Tandem in the Northern District of Texas. However, a stay would slow down adjudication for the non-signatory Defendants. Moreover, costs would significantly increase with duplicate proceedings if non-signatory Defendants had to be joined to the transferred case or otherwise participate in the case.

**C.**      ***The judicial economy interest in keeping all claims in one case outweighs the private interests embedded in Exposed and Tandem's forum selection clause.***

The third prong of *Rolls Royce* requires courts to ask whether the preliminary weighing under the first and second prongs is "outweighed by the judicial economy considerations of having all claims determined in a single lawsuit."[112] A primary concern of the Section 1404(a) public

---

[111] Tandem is the only party in this case that is incorporated in Louisiana and has its principal place of business within this district. Rec. Doc. 19 at 2–3.

[112] *Rolls Royce*, 775 F.3d at 681.

interest factors is also judicial economy. "The [Section 1404(a)] public-interest factors include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'"[113] While these factors will rarely defeat a transfer motion in a case where all the claims will be transferred, in a case such as this where enforcement of the venue provision would result in the transfer of only some of Exposed's claims, the interests of judicial economy play a "cardinal role" in the analysis.[114] As such, while "[a] properly conducted section 1404 inquiry may well require a district court to send different parties to pursue the same suit in different districts, the need—rooted in the valued public interest in judicial economy—to pursue the same claims in a single action in a single court can trump a forum-selection clause."[115]

While this Court and the Northern District of Texas would not be so overwhelmingly congested with the transfer of this case, transfer nonetheless would result in unnecessary duplication of cases that strains judicial resources. Although Exposed and Tandem negotiated the forum selection clause to be in Dallas County, where Exposed has its principal place of business, the events that gave rise to this litigation occurred here in this district and Tandem also has its principal place of business within this district in Kenner, Louisiana.[116] Because this litigation concerns a Project at the Naval Air Station Joint Reserve Base in Belle Chasse, there is a local interest in having that localized controversy decided here.[117] As to "the interest in having the trial

---

[113] *Weber,* 811 F.3d. at 767 (citation omitted).

[114] *Rolls Royce*, 775 F.3d at 681.

[115] *Id.* at 679.

[116] Rec. Doc. 19 at 2–3.

[117] *See Ha Thi Le v. Lease Fin. Grp., LLC*, No. 16-14867, 2017 WL 2915488, at *8 (E.D. La. May 9, 2017) (Africk, J.) (denying a motion to transfer venue in part because the "local nature of the allegations" where Plaintiffs are Louisiana residents and Louisiana business and where the events giving rise to the litigation occurred in Louisiana is a "public interest factor which favors maintaining this dispute in Louisiana.").

of a diversity case in a forum that is at home with the law," the case here only concerns federal question jurisdiction and supplemental jurisdiction over Exposed's state law claims, so it is not immediately applicable.[118]  The interest of judicial economy and the local interest in having that localized controversy decided in this Court under Section 1404(a) weigh against transfer.

Therefore, judicial economy interests favor keeping all claims in this Court to be resolved in one proceeding, outweighing the first prong of *Rolls Royce* that favors transfer. As discussed above, severing the cases would require additional expenses and time, as resolution of the Miller Act claims against the non-signatory Defendants is dependent on the resolution of the state law breach of contract claims against Tandem.[119] If the claims against Tandem were transferred to Texas, there would be a duplication of proceedings as the state law claims against Tandem revolve around the same set of facts and similar elements as Exposed's Miller Act claims against non-signatory Defendants.[120] Although Tandem has offered to participate in common discovery, video depositions, and stipulations to ease judicial economy concerns related to severance and transfer,

---

[118] *Weber*, 811 F.3d at 767. The Court notes that if the state law claims against Tandem are severed and transferred, the basis of Northern District of Texas's subject matter jurisdiction is diversity jurisdiction. Because Tandem and Exposed stipulate in the agreement that Texas law shall apply to disputes arising out of the Agreement and Exposed has only alleged state law claims against Tandem, the Northern District of Texas would be the forum that is at home with the law in the transferred case.

[119] *See Duhon v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll., et al.*, No. 20-2022, 2021 WL 3709519, at *5 (E.D. La. Aug. 20, 2021) (Milazzo, J.) (holding that *Rolls Royce* judicial economy concerns and Section 1404 public interest factors outweigh the private interests of parties who agreed to a forum selection clause because "Plaintiff's claims against [the signatory Defendant] are highly connected to Plaintiff's claims against the other defendants."); *Ha Thi Le*, 2017 WL 2915488, at *7 (denying motion to transfer venue in part because "the nature of the allegations are such that the claims against each of the defendants are inextricably intertwined."); *Axis Oilfield Rentals, LLC v. Mining, Rock, Excavation and Const., LLC,* No. 15-1627, 2015 WL 5774801, at * 6 (E.D. La. Sept. 30, 2015) (Barbier, J.) (holding that "the judicial economy considerations of having all claims determined in a single lawsuit weighs heavily in favor of denying severance and transfer.").

[120] *See Duhon*, 2021 WL 3709519, at *5 (denying motion to sever and transfer because "severance and transfer in this case will undoubtedly result in parallel litigation and consequently result in a significant waste of judicial resources."); *Ha Thi Le*, 2017 WL 2915488, at * 7 (finding that transfer "would create two identical federal lawsuits" and the "public interest in avoiding that result is a strong one.").

the result is still that there would be two duplicate cases that require more judicial resources than a single case.

**V. Conclusion**

Although the mandatory forum selection clause favors severance and transfer under the first prong of *Rolls Royce*, the second and third prongs of the *Rolls Royce* analysis disfavor severance and transfer because of inconvenience to non-signatory Defendants and the strain on judicial economy. Accordingly, for the reasons discussed above,

**IT IS HEREBY ORDERED** that Tandem's Motion to Sever and Transfer is **DENIED**.[121]

**IT IS FURTHER ORDERED** that Tandem's Motion to Dismiss Pursuant to Rule 12(b)(6)[122] is **MOOT**.

**NEW ORLEANS, LOUISIANA**, this  14th  day of November, 2023.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[121] Rec. Doc. 16.

[122] *Id.*