UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF EXPOSED ROOF DESIGN, LLC** | CIVIL ACTION |
| **VERSUS** | NO. 23-2293 |
| **TANDEM ROOFING, LLC, ET AL.** | SECTION "O" |

ORDER AND REASONS

Before the Court is the Federal Rule of Civil Procedure 12(b)(6) motion[1] of Miller-Act Plaintiff United States of America, for the Use and Benefit of Exposed Roof Design, LLC ("Exposed"), to dismiss the unjust enrichment counterclaim of Defendant Tandem Roofing, LLC ("Tandem"). Tandem opposes[2] the motion. For the reasons that follow, Exposed's 12(b)(6) motion to dismiss Tandem's unjust enrichment counterclaim is **GRANTED**.

I. BACKGROUND

This case arises from a dispute over a project to repair and replace the roof at the Naval Air Station Joint Reserve Base New Orleans in Belle Chasse, Louisiana.[3] The Department of Navy selected E&F Construction ("E&F) as the prime contractor on the project.[4] In turn, E&F contracted with Tandem, a commercial and industrial roofing company, to provide roofing materials and perform limited roofing work.[5]

---

[1] ECF No. 25.
[2] ECF No. 27.
[3] *See generally* ECF No. 19.
[4] *Id.* ¶¶ 1, 14.
[5] *Id.* ¶¶ 14–17.

Tandem then entered into a subcontract ("Subcontract") with Exposed whereby Tandem agreed to pay Exposed $215,625 to supply labor for the project.[6]

In its First Amended Complaint, Exposed alleges that Tandem mismanaged the project.[7] Exposed claims that, after less than a month of work, it realized that payment of $215,625 was insufficient to cover its labor and costs.[8] So Exposed and Tandem executed a change order requiring Tandem to pay Exposed an additional $215,625 for additional labor.[9]

Soon after, according to Exposed, Tandem informed Exposed that it lacked the funds to keep Exposed on the project.[10] Exposed claims that, over the next several months, Tandem repeatedly promised to pay the amount owed.[11] But Tandem eventually changed its position and informed the company that it would make no further payments.[12] Exposed now brings this action against Tandem and E&F, along with Markel Insurance Company and SureTec Insurance Company (collectively, the "Sureties"), to recover the unpaid balance owed by Tandem and additional damages.[13] Specifically, Exposed brings claims against Tandem for breach of contract, a violation of the Texas Prompt Payment Act, and quantum meruit; and it brings a claim against E&F, Markel, and SureTec under the Miller Act.[14]

---

[6] *Id.* ¶ 19; ECF No. 19-1. This was the first project to use Tandem's newly developed roofing system. ECF No. 19 ¶ 1.
[7] *Id.* ¶ 22.
[8] *Id.* ¶¶ 23–24.
[9] *Id.* ¶¶ 24–25; ECF No. 19-2.
[10] ECF No. 19 ¶ 26.
[11] *Id.* ¶ 28.
[12] *Id.* ¶¶ 26, 28–34.
[13] ECF Nos. 1, 19.
[14] ECF No. 19. Exposed's First Amended Complaint withdrew both its Miller Act claim against Tandem and its Federal Prompt Payment claim against all Defendants.

Tandem asserts counterclaims against Exposed.[15] In its First Amended Answer to Plaintiff's First Amended Complaint and Original Counterclaim, Tandem acknowledges that, under the terms of the Subcontract, Tandem initially agreed to pay Exposed $215,625 for labor.[16] Tandem claims to have made the first payment of $53,906.25 in accordance with the Subcontract's terms.[17] Approximately one month later, according to Tandem, Exposed "demanded" that Tandem agree to a change order that doubled the cost of the project, and "threaten[ed]" to withhold Exposed workers from the project if Tandem didn't comply.[18] Tandem alleges that, "[u]nder this duress," it agreed to the change order and additional payment of $215,625.[19] Tandem subsequently made a second payment to Exposed in the amount of $59,000.[20]

The following month, according to Tandem, Exposed "demanded a second change order" in the amount of "$400,000 more."[21] At that point, Tandem gave notice to Exposed that it was exercising Section 12.10 of the Subcontract, the "termination for convenience" provision.[22] Under that provision, Tandem was permitted to terminate the Subcontract with seven-days' notice "for any reason and without any default under the agreement."[23] Triggering this provision meant that Tandem would be required to pay Exposed, "as its entire and sole compensation," the "actual necessary and reasonable costs of performing the work to the date of termination . . .

---

[15] ECF No. 22.
[16] *Id.* at 8.
[17] *Id.*
[18] *Id.*
[19] *Id.* at 9
[20] *Id.*
[21] *Id.*
[22] *Id.*; ECF No. 19-1 at 16.
[23] *Id.*

3

plus a reasonable mark-up for overhead and profit as to such work only."[24] This amount would be determined "by an audit of [Exposed's] records."[25] In turn, Exposed was required to make its records "available at reasonable times and places for [Tandem's] audit."[26]

According to Tandem, Exposed did not fulfill its obligation under Section 12.10 to make its records reasonably available.[27] Unable to perform the audit, and "out of an abundance of caution, on the demand of [Exposed]," Tandem nevertheless paid Exposed an additional $102,718.75.[28]

Tandem claims to have paid Exposed $215,625 over the course of the project—which is 50% of the agreed-upon payment under the Subcontract and the change order.[29]

After terminating the contract, Tandem "worked with E&F" to determine how much of the project Exposed completed.[30] They concluded that Exposed completed 30% of the total project.[31] Thus, according to Tandem, Exposed owes Tandem $86,250, which represents the amount Tandem paid Exposed, less 30% the total contract value.[32]

Tandem now brings two counterclaims against Exposed: (1) breach of contract, based on Exposed's refusal to allow Tandem to audit its records and Tandem's

---

[24] ECF No. 22 at 9–10; ECF No. 19-1 at 16.
[25] *Id.*
[26] *Id.*
[27] ECF No. 22 at 10.
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*

subsequent overpayment on the contract, and (2) unjust enrichment, based on the same overpayment.

Exposed moves to dismiss Tandem's unjust enrichment counterclaim under Rule 12(b)(6).[33] Because the case comes to the Court on Exposed's Rule 12(b)(6) motion to dismiss Tandem's counterclaim, the Court accepts as true all well-pleaded facts in the counterclaim and construes the allegations in the light most favorable to Tandem. *See Lewis v. Danos*, 83 F.4th 948, 953 (5th Cir. 2023) (citing *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020)).

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In its Rule 12(b)(6) review, the Court "accept[s] all well-pleaded facts as true and construe[s] the allegations in the light most favorable to the plaintiff." *Lewis*, 83 F.4th at 953. The Court also "may consider 'any documents attached to the motion to dismiss that are central to the claim and referenced in the complaint.'" *PHI Grp., Inc. v. Zurich Am. Ins. Co.*, 58 F.4th 838, 841 (5th Cir. 2023) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). "Although '[courts] accept all

---

[33] ECF No. 25.

well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true.'" *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (quoting *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023)).

## III. ANALYSIS

Exposed now moves for 12(b)(6) dismissal of Tandem's unjust enrichment claim, arguing (1) unjust enrichment is not a standalone claim under Texas law, and (2) even so, the claim is unavailable because the parties' Subcontract covers the subject matter of this dispute.[34] This Court need not resolve the first argument,[35] because the second argument is dispositive.

Under Texas law, unjust enrichment claims are "unavailable when a valid, express contract governing the subject matter of the dispute exists." *Aspan v. Carrington Mortg. Servs., L.L.C.*, No. 23-20545, 2024 WL 4054375, at *4 (5th Cir. Sept. 5, 2024) (quoting *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001)) (affirming the dismissal of an unjust enrichment claim that was based on the same allegations as the claim arising out of the contract).[36] "Generally speaking,

---

[34] ECF No. 25-1 at 3–5.

[35] Suffice to say, there is "varied authority" as to whether Texas courts allow unjust enrichment claims. *Janvey v. Alguire*, 846 F. Supp. 2d 662, 674 (N.D. Tex. 2011). As the Fifth Circuit has noted, "courts of appeals in Texas appear split on whether unjust enrichment is an independent cause of action." *Elias v. Pilo*, 781 F. App'x 336, 338 n.3 (5th Cir. 2019) (collecting cases).

[36] The Subcontract contains a choice-of-law clause which provides that the Subcontract "shall be interpreted under the laws of the state of Texas." ECF No. 19-1 at 17. *See also* Exposed's First Amended Complaint, ECF No. 19 ¶ 13 ("Pursuant to § 14.4 of the Subcontract, the laws of the State of Texas are to be applied to this dispute."). While Texas law indisputably applies to Tandem's breach of contract counterclaim, neither party questions—and the Court need not decide—whether Louisiana law, rather than Texas law, applies to Tandem's unjust enrichment counterclaim. Much like Texas,

6

when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory[.]" *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (citation omitted). The reasoning is that "unjust enrichment does not operate to rescue a party from the consequences of a bad bargain, and the enrichment of one party at the expense of the other is not unjust where it is permissible under the terms of an express contract." *King v. Baylor Univ.*, 46 F.4th 344, 367 (5th Cir. 2022) (quoting *First Union Nat'l Bank v. Richmont Cap. Partners I, L.P.*, 168 S.W.3d 917, 931 (Tex. App.—Dallas 2005, no pet.) (citation omitted)). "Unjust enrichment is not a proper remedy merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant." *Juan Antonio Sanchez, PC v. Bank of S. Texas*, 494 F. Supp. 3d 421, 441 (S.D. Tex. 2020) (Alvarez, J.) (quotation omitted).

Here, the parties entered into an express agreement whereby, in the event of a "termination for convenience," Section 12.10 of the Subcontract required Tandem to pay Exposed the "actual necessary and reasonable costs" for the work performed as of the termination date, plus a mark-up for overhead and profit. Section 12.10 also required Exposed to provide records that would enable Tandem to audit Exposed's work and thereby ascertain the "actual necessary and reasonable costs" owed to Exposed. According to Tandem, Exposed failed to fulfill this obligation, and because

---

Louisiana precludes consideration of unjust enrichment claims when a valid, express contract covers the subject matter of the dispute. *See Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 408 (5th Cir. 2004) ("Louisiana law provides that no unjust enrichment claim shall lie when the claim is based on a relationship that is controlled by an enforceable contract.").

of this breach, Tandem overpaid Exposed in the amount of $86,250. This is the factual basis underlying Tandem's breach of contract counterclaim.[37]

But these facts also lie at the heart of Tandem's unjust enrichment counterclaim—explicitly so. The unjust enrichment counterclaim reads, "[Exposed] has obtained an unjust monetary benefit in the form of overpayment of the amount due under section 12.10 of the Subcontract, by fraud, duress, and/or taking of an undue advantage over Tandem."[38] The counterclaim goes on: "By reason of the unjust enrichment of [Exposed] through its actions, Tandem has been damaged by the amount of the overpayment to [Exposed] in the sum of $86,250.00[.]"[39] The "actions" complained of by Tandem appear to be Exposed's failure to make available its records as required under Section 12.10. So paraphrasing this counterclaim: Exposed was unjustly enriched after Exposed failed to comply with Section 12.10's record requirement, leading to Tandem's overpayment. Under this reading, both counterclaims allege essentially the same facts and request the same relief.

Accordingly, the only justifiable conclusion is that the Subcontract forms the basis for both counterclaims. And when the contract addresses the matter at issue, the party claiming unjust enrichment is limited to remedies under the contract rather

---

[37] ECF No. 22 at 11.
[38] To be sure, Tandem uses the word "duress" twice in its First Amended Answer to Plaintiff's First Amended Complaint and Original Counterclaim—but describing two different circumstances. ECF No. 22 at 9, 11. Tandem first uses "duress" in the factual background, describing how Exposed placed Tandem under "duress" when Exposed threatened to remove its project crew if Tandem didn't agree to the change order. *Id.* at 9. Tandem then uses "duress" in context of the unjust enrichment counterclaim to describe Exposed's actions in obtaining the overpayment under Section 12.10. *Id.* at 11. Whether either scenario legally constitutes "duress" is not before the Court in this motion to dismiss. What matters to the present analysis is whether the unjust enrichment counterclaim, as alleged in Tandem's pleading, involves the same subject matter as the breach of contract claim. It does.
[39] *Id.*

than equitable remedies. *King*, 46 F.4th at 368 (citations omitted). *See also Fortune Prod. Co.*, 52 S.W.3d at 684 (finding unjust enrichment inapplicable when an express contract covers the subject matter of the parties' dispute); *Burlington N. R.R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 98 (Tex. App.—Texarkana 1996), aff'd sub nom. *Sw. Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467 (Tex. 1998) (holding that it was "unable to locate any case in which an unjust enrichment remedy was allowed when the contested issue was governed by a valid contract"). Because a valid contract exists, Tandem is afforded an adequate remedy at law.

## IV. CONCLUSION

**IT IS ORDERED** that Exposed's motion[40] to dismiss is **GRANTED**. Accordingly, Tandem's unjust enrichment counterclaim is **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, this 26th day of March, 2025.

_____
BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[40] ECF No. 25.